Priority
Send    ——
Enter    ——
Closed   ——
JS-5/JS-6 ——
JS-2/JS-3 ——
Scan Only——

FILED
CLERK, U.S. ...
NOV 2 7 2002
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECIL DOUGLASS CARR,<br><br>Petitioner,<br><br>v.<br><br>TOM HORNUNG, Warden,<br><br>Respondent. | **CASE NUMBER**<br><br>CV02-00572-GLT (JTL)<br><br>---<br><br>**NOTICE OF FILING**<br>**OF MAGISTRATE JUDGE'S REPORT**<br>**AND RECOMMENDATION AND THE**<br>**LODGING OF PROPOSED JUDGMENT**<br>**AND/OR ORDER** |

TO:    All Parties of Record:

Cecil Douglass Carr, CDC No. D-08901      Robert S. Henry, Deputy Attorney General
San Diego California Correctional Institution   300 S. Spring Street, 5th Floor
480 Alta Road                        Los Angeles, CA 90013
San Diego, CA 92179

     You are hereby notified that pursuant to the Local Rules Governing duties of Magistrate Judges, the Magistrate Judge's report and recommendation has been filed and a proposed judgment and/or order has been lodged on **November 27, 2002**, copies of which are attached.

     Any party having objections to the report and recommendation and the proposed judgment and/or order shall, **not later than December 19, 2002,** file and serve a written statement of objections with points and authorities in support thereof before the Honorable <u>Jennifer T. Lum</u>, U.S. Magistrate Judge.

     Failure to so object within the time limit specified shall be deemed a consent to any proposed findings of fact. Upon receipt of objections, or upon lapse of the time for filing objections, the case will be submitted to the District Judge for disposition. Following entry of judgment and/or order, all motions or other matters in the case will be considered and determined by the District Judge.

     The report and recommendation of a Magistrate Judge is not a final appealable order. A notice of appeal pursuant to Federal Rules of Appellate Procedure 4(a)(1) should not be filed until entry of a judgment and/or order by the District Judge.

CLERK, UNITED STATES DISTRICT COURT

Dated: <u>November 27, 2002</u>

By <u>  Debra Plato  </u>
         Deputy Clerk

Attachments



FILED
CLERK, U.S. DISTRICT COURT

NOV 2 7 2002

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

CECIL DOUGLASS CARR,                )   Case No. CV 02-0572-GLT (JTL)
                                    )
                Petitioner,         )
                                    )   REPORT AND RECOMMENDATION OF
        v.                          )   UNITED STATES MAGISTRATE JUDGE
                                    )
TOM HORNUNG, Warden,                )
                                    )
                Respondent.         )
_____ )

The Court submits this Report and Recommendation to the Honorable Gary L. Taylor, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 01-13 of the United States District Court for the Central District of California.

## PROCEEDINGS

On January 22, 2002, Cecil Douglass Carr ("Petitioner") filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"). On March 4, 2002 Petitioner filed a First Amended Petition. Thereafter, on September 9, 2002, Tom Hornung ("Respondent") filed a Return to the First Amended Petition

///

1 ("Return").   On November 15, 2002, Petitioner filed his Traverse to

2 Respondent's Return ("Traverse").

3      Thus, this matter now is ready for decision.

4

5 <center>**BACKGROUND**</center>

6      On November 7, 1996, a jury convicted Petitioner of one count of

7 attempted second-degree burglary (Cal. Penal Code §§ 664/459).

8 (Return, Exh. A).   In a separate proceeding, the trial court found

9 true that Petitioner had suffered two prior serious or violent felony

10 convictions (Cal. Penal Code §§ 667(b)-(i), 1170.12(a)-(d)).   (Clerk's

11 Transcript ["CT"] at 185).   Thereafter, the trial court sentenced

12 Petitioner to twenty-five years to life with the possibility of parole

13 in accordance with California's Three Strikes Law (Cal. Penal Code §§

14 667(b)-(i), 1170.12(a)-(d)).

15      Petitioner then appealed his conviction to the California Court

16 of Appeal. (Return, Exh. B).   On August 19, 1998, the court of appeal

17 affirmed Petitioner's conviction. (Return, Exh. B).   Next, Petitioner

18 filed a petition for review in the California Supreme Court, which was

19 denied on October 28, 1998.   (Motion, Exhs. C and D).   Petitioner did

20 not pursue any collateral attacks on the judgment.

21      Petitioner filed this Petition on January 22, 2002.

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

<center>2</center>

1 || **SUMMARY OF THE EVIDENCE PRESENTED AT TRIAL**

2    Petitioner does not contest the sufficiency of the evidence to

3 support his conviction.   The Court, therefore, takes the following

4 summary from the California Court of Appeal Opinion:

5    *On August 3, 1996, at approximately 5:30 a.m., Paul White was*

6 *standing near Giovanni's Pizza restaurant in the City of Lakewood.*

7 *White saw a U-Haul truck back up to the rear of the restaurant.*

8 *Appellant and another man were near the truck.   One of them was trying*

9 *to pry open the rear door of the restaurant.   White called 9-1-1 and*

10 *described the situation.   While White was on the phone, the truck*

11 *drove away.*

12    *Los Angeles Deputy Sheriff Regina Minnis responded to the call.*

13 *She saw a U-Haul truck parked in front of the restaurant; appellant*

14 *and another man were sitting in the cab of the truck.   The truck was*

15 *parked with its back facing the front doors of the restaurant.   Upon*

16 *being directed to do so, the two men sat on the sidewalk.*

17    *Deputy Sheriff Christopher Derry arrived to assist Deputy Minnis.*

18 *Deputy Derry searched the truck; he found a silver tire iron and two*

19 *crow bars, one of which was blue.   Pry marks, some of which were blue,*

20 *were on the front and back doors and the door jams.   The blue pry*

21 *marks matched the color on the blue crowbar.   The security screen to*

22 *the back door was propped open.*

23    *White identified the U-Haul truck as the same one he had seen*

24 *earlier.   White indicated appellant was dressed in the same way as one*

25 *of the two men he had seen trying to enter the restaurant.*

26 (Return, Exh. C, Court of Appeal Opinion at 2-3).

27 ///

28 ///

**PETITIONER'S CLAIMS**

1.    The trial court denied Petitioner his right to a public trial by addressing the jurors who served on his jury by number, instead of by name.

2.    The trial court violated Petitioner's right to due process by improperly admitting into evidence Petitioner's uncharged bad acts.

3.    The trial court misapplied California's Three Strikes Law to Petitioner's conviction.

4.    California's Three Strikes Law, as applied to Petitioner, violated the Ex Post Facto Clause.

5.    The Three Strikes Law is unconstitutionally vague and ambiguous.

**STANDARD OF REVIEW**

The Court's consideration of Petitioner's claims is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (hereafter, the "Act"). Under 28 U.S.C. § 2254(d), as amended by the Act:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

4

1                determination of the facts in light of the

2                evidence presented in the State court proceeding.

3       In Williams v. Taylor, 529 U.S. 362, 405-406 (2000), the United

4 States Supreme Court held that a state court's decision can be

5 contrary to federal law either 1) if it fails to apply the correct

6 controlling authority, or 2) if it applies the controlling authority

7 to a case involving facts materially indistinguishable from those in

8 a controlling case, but nonetheless reaches a different result. A

9 state court's decision can involve an unreasonable application of

10 federal law if it either 1) correctly identifies the governing rule

11 but then applies it to a new set of facts in a way that is objectively

12 unreasonable, or 2) extends or fails to extend a clearly legal

13 principle to a new context in a way that it is objectively

14 unreasonable. Id. at 407-08; see also Van Tran v. Lindsay, 212 F.3d

15 1143, 1153 (9th Cir. 2000) (defining unreasonable application as

16 involving situations where the state court has committed clear error),

17 cert. denied, 121 S.Ct. 340 (2000).

18       In this case, the California Court of Appeal issued a reasoned

19 decision explaining why the state court denied Petitioner's current

20 claims for relief. In order to determine whether the state court's

21 decision was objectively unreasonable, the Court must decide whether

22 the state court clearly erred, that is, whether the Court is left with

23 a definite and firm conviction that an error has been committed.

24 Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Absent clear

25 error, the deference we owe state court decisions dictates a denial of

26 habeas relief, even when we conclude that a legal error has been

27 committed.").

28 ///

1 |                                        **DISCUSSION**

## A. PETITIONER SUFFERED NO PREJUDICE FROM THE TRIAL COURT'S DECISION TO REFER TO JURORS BY NUMBER

In his first claim for relief, Petitioner contends that the trial court denied him his right to a public trial by addressing the jurors who served on his jury by number, instead of by name. (Petition, Points and Authorities at 1-16). Petitioner claims that referring to the jurors by number relieved the jurors from being held accountable for the verdict they reached. (Petition, Points and Authorities at 7). Furthermore, he claims that it created an "aura of secrecy" around the jury's verdict. (Petition, Points and Authorities at 7). Petitioner reasons that this "aura of secrecy" made the jury more likely to convict Petitioner. (Petition, Points and Authorities at 14-15).

Additionally, Petitioner contends that the trial court identified no "particularized need" to keep the jurors' names from Petitioner. (Petition, Points and Authorities at 4). Instead, the trial court did so only to expeditiously give effect to California Code of Civil Procedure Section 237.[1] But that statute, according to Petitioner, neither required nor permitted the court to withhold the jurors' identities from Petitioner before the jury returned its verdict.

---

[1] California Code of Civil Procedure Section 237, in pertinent part, states:

> The names of qualified jurors drawn from the qualified juror list for the superior court shall be made available to the public upon request unless the court determines that a compelling interest, as defined in subdivision (b), requires that this information should be kept confidential or its use limited in whole or in part.

Cal. Code of Civ. Pro. § 237(a)(1).

1    (Petition, Points and Authorities at 4-6).  Petitioner concludes that

2    the trial court erred in refusing to publicize the jurors' names, and

3    that this error constituted a structural defect that requires this

4    Court to reverse his conviction.

5         "In conducting habeas review, a federal court is limited to

6    deciding whether a conviction violated the Constitution, laws or

7    treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68

8    (1991); see also 28 U.S.C. § 2254(a).  Habeas relief is not available

9    for an alleged error in the interpretation or application of state

10   law.  See id. at 68; see also Jammal v. Van de Kamp, 926 F.2d 918, 919

11   (9th Cir. 1991); Dugger v. Adams, 489 U.S. 401, 409 (1989) ("The

12   availability of a claim under state law does not of itself establish

13   that a claim was available under the United States Constitution.").

14        To the extent that Petitioner challenges the trial court's

15   application of Section 237, he has alleged a purely state law claim.

16   Petitioner claims that Section 237 neither required nor permitted the

17   trial court to withhold the juror's names.    (Petition, Points and

18   Authorities at 3-6).  Even if this were true, this is not a federal

19   cause of action.  As such, the Court cannot grant relief to Petitioner

20   on this claim.

21        Moreover, Petitioner's citation to the Due Process Clause does

22   not alter the Court's analysis.  A petitioner cannot transform an

23   otherwise purely state law claim into a federal claim by attaching a

24   reference to the Due Process Clause. See King v. White, 839 F. Supp.

25   718, 728-29 (C.D. Cal. 1993); see also Lanford v. Day, 110 F.3d 1380,

26   1389 (9th Cir. 1997) (petitioner may not "transform a state-law issue

27   into a federal one merely by asserting a violation of due process");

28   Poland v. Stewart, 169 F.3d 573, 584 (9th Cir. 1998) (same); Cacoperdo

                                    7

1 | v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994); Miller v. Stagner,

2 | 757 F.2d 988, 993-94 (9th Cir. 1985), cert. denied, 475 U.S. 1049

3 | (1986)("Although cast as a federal constitutional issue, appellants'

4 | claim rests on an asserted violation of state law.  It therefore fails

5 | to allege the deprivation of a federal right necessary to entitle them

6 | to habeas corpus relief.").

7 |     Assuming Petitioner's remaining challenges present a federal

8 | question, those challenges lack merit.  First, Petitioner alleges that

9 | the trial court denied him access to the jurors' names.  Yet the

10 | California Court of Appeal noted that the parties had access to the

11 | jurors' names.  (Court of Appeal Opinion at 6).  Petitioner does not

12 | challenge this finding.

13 |     Second, nothing in the record supports Petitioner's claim that

14 | referring to the jurors by number made the jury more likely to return

15 | a guilty verdict.  The trial court explicitly instructed the jury to

16 | presume Petitioner innocent until proven guilty.  (CT at 86) ("A

17 | defendant in a criminal action is presumed to be innocent until the

18 | contrary is proved. . . .").  Likewise, the trial court instructed the

19 | jury that the prosecutor had the burden to prove Petitioner's guilt

20 | beyond a reasonable doubt.  Moreover, the trial court admonished the

21 | jury against finding Petitioner guilty unless the prosecutor met that

22 | burden:

23 |         The burden is on the People to prove beyond a

24 |         reasonable doubt that the defendant is the

25 |         person who committed the crime with which [he] is

26 |         charged.

27 |         If, after considering the circumstances of the

28 |         identification [and any other evidence in this

8

1          case], you have a reasonable doubt whether
2          *defendant was the person who committed the crime,*
3          you must give the defendant the benefit of that
4          doubt and find [him] not guilty.
5    (CT at 87) (CALJIC 2.91). The Court presumes that the jury followed
6    the instructions that the trial court gave it. See Weeks v. Angelone,
7    528 U.S. 225, 234 (2000).

8          Third, nothing in the record suggests that the trial court
9    prevented either party from obtaining information about the jurors
10   during voir dire.   On the contrary, the trial court conducted an
11   extensive voir dire of the potential jurors.   (Reporter's Augmented
12   Transcript ["RAT"] at 6-76).  Moreover, the trial court offered both
13   parties opportunities to ask additional questions of the individual
14   jurors.  (See e.g., RAT at 64).  Other than the jurors' names, there
15   is no other juror information that Petitioner claims he needed to
16   properly assess their ability to act as impartial jurors.   And, as
17   discussed above, the trial court did, in fact, the parties access to
18   the jurors' names.

19         Petitioner's claim, therefore, appears to revolve around the
20   trial court's decision to refer to the jurors by number, instead of by
21   name.  He states that referring to the jurors by number, instead of by
22   name, demeaned the jurors' individuality and made them feel like
23   "robots." (Petition, Points and Authorities at 14).  But the court of
24   appeal noted that juror anonymity could just as likely have had the
25   opposite effect:

26          Since names were not used, there was no need to
27          subsequently extract this information.   This
28          system did not weaken juror accountability.   It

                                    9

1        was logical that by protecting juror identity,

2        jurors would be encouraged to 'act without fear

3        and to proceed on the courage of their

4        convictions.'

5   (Return, Exh. C, Court of Appeal Opinion at 6) (citations omitted).

6   The Court concurs with this reasoning.

7        Most importantly, Petitioner fails to explain how referring to

8   the jurors by number denied him a public trial.  As the court of

9   appeal noted, the trial court conducted the trial in public, and the

10  jurors remained in open view of the public throughout the proceedings.

11  Referring to the jurors by number instead of name, therefore, had no

12  impact on Petitioner's right to a public trial.   The Court denies

13  Petitioner's claim.

14

15  **B.   THE TRIAL COURT DID NOT VIOLATE PETITIONER'S RIGHT TO DUE PROCESS**
    **BY ADMITTING EVIDENCE THAT PETITIONER POSSESSED A STOLEN TRUCK**

16

17       In his second claim for habeas relief, Petitioner alleges that

18  the trial court violated his right to due process by admitting

19  Petitioner's uncharged bad acts into evidence.  (Petition, Points and

20  Authorities at 17-24).   First, Petitioner contends that the trial

21  court erred in allowing the prosecutor to introduce evidence that

22  police apprehended Petitioner in a stolen U-Haul truck.[2]  (Petition,

23  _____

24       [2] Respondent states that Petitioner failed to exhaust his state
    court remedies on this claim.  (Return at 18-20).  A state prisoner
25  must exhaust his state court remedies before petitioning for a writ
    of habeas corpus in federal court.  See 28 U.S.C. § 2254(b); see
26  also Duncan v. Henry, 513 U.S. 364, 365 (1995)(per curiam).
    Regardless, the Court may deny an unexhausted claim on the merits.
27  See 28 U.S.C. § 2254(b)(2) (as amended by the Antiterrorism and
    Effective Death Penalty Act).  Here, the Court denies Petitioner's
28                                                          (continued...)

                                    10

1   Points and Authorities at 17-18).  Second, Petitioner faults the trial
2   court for admitting this evidence without instructing the jury that it
3   could consider the evidence only for limited purposes.  (Petition,
4   Points and Authorities at 24).  Petitioner claims that these combined
5   errors caused the jury to conclude that Petitioner was a "bad person,"
6   who had an inclination to commit crimes.  (Petition, Points and
7   Authorities at 24).  Consequently, according to Petitioner, the trial
8   court's errors prejudiced Petitioner and denied him a fair trial.
9   (Petition, Points and Authorities at 17-24).

10      Before trial, the prosecutor moved to introduce evidence that
11  police apprehended Petitioner in a stolen U-Haul truck.  (Reporter's
12  Transcript ["RT"] at 9).  The prosecutor argued that driving a stolen
13  vehicle while committing a robbery showed that Petitioner intended to
14  burglarize the restaurant.  (RT at 9).  In particular, the prosecutor
15  reasoned that Petitioner used the stolen car to prevent police from
16  tracing the stolen car to Petitioner.  (RT at 9-10).  The prosecutor
17  acknowledged that the evidence presented a "close call" between the
18  prejudicial impact and the probative value of the evidence.  (RT at
19  12).  Nevertheless, the prosecutor argued that the latter outweighed
20  the former.  (RT at 12).

21      Defense counsel objected to this evidence.  (RT at 11).  He
22  argued that the evidence's prejudicial impact vastly outweighed its
23  probative value.  (RT at 11).  Defense counsel further argued that the
24  prosecutor could not prove that Petitioner knew the truck was stolen.

25

26  ――――――――――――――
        [2](...continued)
27  claim on the merits.  The Court, therefore, need not address
    Respondent's argument that Petitioner failed to exhaust his state
28  court remedies.

1   (RT at 11).    In fact, the prosecutor had dismissed a count of
2   knowingly possessing stolen property against Petitioner for lack of
3   sufficient evidence.    (RT at 11).

4          After considering the arguments, the trial court allowed the
5   prosecutor to introduce the evidence.    The trial court found that the
6   evidence was probative to show the "nature of the planning and
7   relative sophistication of the effort to break in."    (RT at 12).

8          At trial, the prosecutor called William Spaulding, a U-Haul
9   employee, to establish that Petitioner possessed a stolen truck.    (RT
10  at 99-107).    Spaulding testified that a customer, Robert Barcenas,
11  rented a U-Haul truck on June 28, 1996.    (RT at 106).    Although
12  Barcenas agreed to return the truck on the same day, he never did.
13  (RT at 106).    In fact, U-Haul never heard from him again.    (RT at
14  107).    The prosecutor then showed that Petitioner was apprehended in
15  the same U-Haul truck that Barcenas had rented from U-Haul over a
16  month earlier.    (RT at 100-06).

17         Petitioner claims that, by allowing Spaulding's testimony into
18  evidence, the trial court violated his right to due process.
19  Petitioner unsuccessfully raised this claim in the California Court of
20  Appeal.    In rejecting Petitioner's claim, the court of appeal
21  concluded that evidence showing that Petitioner possessed the stolen
22  truck was relevant and had substantial probative value. (See Court of
23  Appeal Opinion at 10).    Specifically, the court of appeal stated that
24  the evidence showed Petitioner's intent and connected Petitioner to
25  the crime:

26              [T]he fact that the U-Haul truck was stolen was
27              admissible to prove intent.    As the prosecutor
28              argued, using a stolen vehicle makes it more

1          difficult to locate the perpetrators of a

2          burglary.  The truck was a tool burglars use to

3          cover their tracks.  Here, this burglarious tool

4          was strong, material evidence in the chain of

5          events tending to link appellant to the crime.

6          As such, it was relevant and admissible.

7  (Return, Exh. C, Court of Appeal Opinion at 10) (citations and

8  footnote omitted).

9      The state court's rejection of Petitioner's due process claim

10 neither was contrary to nor involved an unreasonable application of

11 clearly established federal law, as determined by the United States

12 Supreme Court.  See 28 U.S.C. § 2254(d).  Generally, federal habeas

13 courts do not review questions of state evidentiary law.  Jammal v.

14 Van De Kamp, 926 F.2d 918, 919 (9th Cir. 1991) ("We are not a state

15 supreme court of errors; we do not review questions of state evidence

16 law."); Estelle, 502 U.S. at 67 ("Such an inquiry, however, is no part

17 of a federal court's habeas review of a state conviction.  We have

18 stated several times that 'federal habeas corpus relief does not lie

19 for errors of state law.'") (citations omitted).  Thus, habeas relief

20 is available for wrongly excluded evidence only when the absence of

21 the questioned evidence renders the trial so fundamentally unfair as

22 to violate federal due process.  Jeffries v. Blodgett, 5 F.3d 1180,

23 1193 (9th Cir. 1993), cert. denied, 510 U.S. 1191 (1994); Estelle, 502

24 U.S. at 67.

25     Thus, to the extent that Petitioner's claim is merely a state law

26 claim, this Court lacks authority to grant habeas relief.

27 See Estelle, 502 U.S. at 68; see also O'Bremki v. Maas, 915 F.2d 418,

28 423 (9th Cir. 1990) ("A writ of habeas corpus is available for a state

                                13

1   prisoner 'only on the ground that he is in custody in violation of the

2   Constitution, laws or treaties of the United States.'") (<u>citations</u>

3   <u>omitted</u>).

4        In California, a prosecutor cannot introduce evidence of a

5   defendant's prior uncharged acts to show that the defendant had the

6   criminal disposition or the propensity to commit the crime charged.

7   <u>See</u> Cal. Evid. Code § 1101(a); <u>see</u> <u>also</u> <u>People v. Brown</u>, 17 Cal. App.

8   4th 1389, 1395 (1993); <u>McKinney v. Rees</u>, 993 F.2d 1378, 1380 (9th Cir.

9   1993). But a trial court may allow a prosecutor to introduce evidence

10  of uncharged acts when the evidence is relevant to prove motive or

11  intent.   <u>See</u> Cal. Evid. Code. § 1101(b); <u>Brown</u>, 17 Cal. App. 4th at

12  1395; <u>Houston v. Roe</u>, 177 F.3d 901, 910, n.6 (9th Cir. 1999) (where

13  proper safeguards, such as limiting instructions, are in place, state

14  courts may admit evidence of prior bad acts to show motive or intent).

15  "The admission of 'other acts' evidence, which a defendant contends is

16  unduly prejudicial, will violate due process only when 'there are <u>no</u>

17  permissible inferences the jury may draw from the evidence.'" <u>Windham</u>

18  <u>v. Merkle</u>, 163 F.3d 1092, 1103 (9th Cir. 1998) (<u>citing</u> <u>Jammal v. Van</u>

19  <u>de Kamo</u>, 926 F.2d 918, 919 (9th Cir. 1991) (<u>emphasis</u> <u>in</u> <u>original</u>).

20       Here, the evidence showing that Petitioner possessed a stolen

21  truck created a reasonable inference that Petitioner had the specific

22  intent to burglarize Giovanni's Pizza restaurant.   This inference was

23  "relevant to a fact of consequence" (i.e., Petitioner's intent) and

24  did not "lead only to impermissible inferences about the defendant's

25  character." <u>McKinney</u>, 993 F.2d at 1381.   Moreover, the Court notes

26  that the prosecutor never introduced evidence that Petitioner actually

27  stole the truck.   Rather, the prosecutor used the evidence to show

28  only that Petitioner possessed the truck that Robert Barcenas failed

                                    14

1   to return to U-Haul.  (RT at 100-06).  The admission of the testimony

2   regarding Petitioner's prior bad acts, therefore, did not violate

3   Petitioner's right to due process.

4        Petitioner also argues that the trial court violated his right to

5   due process by admitting the evidence without giving the jury a

6   limiting instruction.  (Petition, Points and Authorities at 24).  In

7   this argument, Petitioner apparently concedes that the evidence about

8   the stolen truck was relevant to show his intent.  But the trial court

9   admitted this highly prejudicial evidence without instructing the jury

10  that it could consider the evidence only to show Petitioner's intent

11  to burglarize the restaurant.  Petitioner argues that, absent such an

12  instruction, the jury could not have used the evidence for the proper

13  purpose of showing his intent to burglarize.

14       Petitioner's claim fails for two reasons.  First, the United

15  States Supreme has never stated that due process requires courts to

16  give a limiting instruction when admitting evidence of a defendant's

17  prior bad acts.  See Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir.

18  2001) ("Nonetheless, the Supreme Court has never expressly held that

19  it violates due process to admit other crimes evidence for the purpose

20  of showing conduct in conformity therewith, or that it violates due

21  process to admit other crimes evidence for other purposes without an

22  instruction limiting the jury's consideration of the evidence to such

23  purposes.").  On the contrary, the Supreme Court has expressly

24  declined to answer the question of whether a court's decision to admit

25  prior bad acts evidence requires a limiting instruction.  See Estelle,

26  502 U.S. at 75 n.5 ("Because we need not reach the issue, we express

27  no opinion on whether a state law would violate the Due Process Clause

28  ///

1 if it permitted the use of 'prior crimes' evidence to show propensity
2 to commit a charged crime.").

3     Here, the court of appeal found that the lack of a limiting
4 instruction did not violate Petitioner's right to due process.  (Court
5 of Appeal Opinion at 10).  The Supreme Court has never addressed this
6 question.  The court of appeal's decision, therefore, did not involve
7 an unreasonable application of clearly established federal law, as
8 determined by the United States Supreme Court.

9     Second, Petitioner never requested a limiting instruction.   In
10 Jammal, the Ninth Circuit held that a petitioner's failure to request
11 a limiting instruction barred him from "complaining of the absence of
12 one."   Jammal, 926 F.2d at 920 n.2 ("Having failed to request a
13 limiting instruction at trial, Jammal is barred from complaining of
14 the absence of one."); see also Garceau, 275 F.3d at 775 n.4
15 (distinguishing Jammal because petitioner requested a limiting
16 instruction).  Here, the state court did not clearly err.  The Court,
17 therefore, rejects Petitioner's claim.

18

19 C.   **PETITIONER'S SENTENCING ISSUES DO NOT WARRANT HABEAS RELIEF**

20     In his third claim for relief, Petitioner raises three separate
21 challenges to the sentence that the trial court imposed for
22 Petitioner's crime of attempted second degree burglary.   First,
23 Petitioner contends that crimes of attempt do not implicate
24 California's Three Strikes Law ("Three Strikes Law").   Thus,
25 Petitioner argues that the trial court erred in applying the Three
26 Strikes Law to Petitioner's conviction for attempted second degree
27 burglary.   Second, Petitioner claims his prior convictions do not
28 qualify as "strikes" under the Three Strikes Law.  Consequently, the

16

trial court erred in relying on his prior convictions to apply the Three Strikes Law.   Third, Petitioner argues that the Three Strikes Law is vague and ambiguous.   As discussed below, all of these claims lack merit.[3]

### 1.   Applying the Three Strikes Law to Crimes of Attempt

Petitioner contends that the Three Strikes Law does not apply when a defendant unsuccessfully attempts to commit a crime. (Petition, Points and Authorities at 25-31).   Instead, he argues, the Three Strikes Law applies only when the defendant successfully commits a crime.   Accordingly, Petitioner maintains that the trial court misapplied the Three Strikes Law to Petitioner's unsuccessful attempt to commit second degree burglary.

"As the Supreme Court has stated time and again, federal habeas corpus relief does not lie for errors of state law." Campbell v. Blodgett, 997 F.2d 512, 522 (9th Cir. 1992) (citing Estelle v McGuire,

---

[3] In his Traverse, Petitioner cites the Ninth Circuit's recent decision in Andrade v. Attorney General of the State if California, 270 F.3d 743, 760 (9th Cir. 2001), cert. granted, 122 S. Ct. 1434 (2002) and Brown v. Mayle, 283 F.3d 1019, 1026 (9th Cir. 2002). Petitioner cites these cases to support his claim that the Three Strikes Law is unconstitutionally vague. (See Traverse at 1-2).   In doing so, Petitioner discusses some aspects of the Supreme Court's test to determine if a sentence violates the Eighth Amendment's ban on cruel and usual punishment. (See Traverse at 1-2).   However, Petitioner does not specifically raise an Eighth Amendment claim in his Traverse.   Notwithstanding this, a habeas petitioner may not raise additional grounds for a habeas petition in a traverse. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief.   In order for the State to be properly advised of additional claims, they should be presented in an amended petition or, as ordered in this case, in a statement of additional grounds.   Then the State can answer and the action can proceed.   We conclude that Cacoperdo did not properly raise this claim in the district court. Habeas claims that are not raised before the district court in the petition are not cognizable on appeal.") (citations omitted).

17

1   502 U.S. 62, 67 (1991); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990);

2   <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984)); <u>see</u> <u>Williams v. Borg</u>, 139

3   F.3d 737, 740 (9th Cir. 1998). Moreover, matters relating to state

4   sentencing issues generally are not cognizable on federal habeas

5   review. <u>Miller v. Vasquez</u>, 868 F.2d 1116, 1118-19 (9th Cir. 1989)

6   (whether assault with a deadly weapon was a serious felony for

7   purposes of state enhancement statute was a state law question not

8   cognizable on habeas); <u>see</u> <u>also</u> <u>Hendricks v. Zenon</u>, 993 F.2d 664, 674

9   (9th Cir. 1993). In fact, a petitioner can obtain habeas relief from

10  a sentencing error only if he can show that the state court misapplied

11  its own sentencing laws in a way that violated fundamental fairness.

12  <u>See</u> <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a

13  showing of fundamental unfairness, a state court's misapplication of

14  its own sentencing laws does not justify federal habeas relief.").

15  Federal courts, however, defer to the state courts' construction of

16  state sentencing statutes. <u>Missouri v. Hunter</u>, 459 U.S. 359, 366

17  (1983); <u>Bueno v. Hallahan</u>, 988 F.2d 86, 88 (9th Cir. 1993).

18      Here, Petitioner's claim for relief concerns a pure question of

19  state law: does the Three Strikes Law apply to attempted crimes?

20  Thus, absent fundamental unfairness, the Court cannot grant federal

21  habeas relief. Moreover, Petitioner has not demonstrated that the

22  trial court misapplied California's sentencing laws. On the contrary,

23  in <u>People v. Espinoza</u>, 58 Cal. App. 4th 248 (1999), the California

24  Court of Appeal upheld a trial court's application of the Three

25  Strikes Law to a defendant's attempted second degree burglary

26  conviction: "when a current felony is an attempt crime and sentencing

27  is in the context of the Three Strikes law, that law supersedes the

28  general statute for punishment of attempts and governs the sentence

18

1 │ that must be imposed." Espinoza, 58 Cal. App. 4th at 249-50.

2

3 │     **2.  Counting Petitioner's Prior Convictions as "Strikes"**

4 │     Petitioner also contends that the trial court erred in counting

5 │ his prior felony convictions as "strikes" under the Three Strikes Law.

6 │ Petitioner committed these prior felonies before the California

7 │ legislature enacted the Three Strikes Law.  At the time he was

8 │ convicted of those prior felonies, however, Petitioner was never

9 │ informed that those convictions would one day qualify as "strikes."

10 │     Petitioner does not explicitly mention any provision of the

11 │ Constitution that the Three Strikes Law allegedly violates.  But he

12 │ appears to allege an Ex Post Facto violation.  The Constitution

13 │ prohibits Congress from passing any "ex post facto law." U.S. Const.

14 │ art I, § 10, cl. 3.  A penal law is ex post facto if (1) it is

15 │ retrospective, applying to events that occurred before its enactment,

16 │ and (2) it disadvantages the offender affected by it. See Collins v.

17 │ Youngblood, 497 U.S. 37, 41 (1990); see also Weaver v. Graham, 450

18 │ U.S. 24, 29 (1981); Watson v. Estelle, 886 F.2d 1093, 1094 (9th Cir.

19 │ 1989).

20 │     The key ex post facto inquiry is the actual state of the law at

21 │ the time of the offense.   See Watson, 886 F.2d at 1096.    A

22 │ retrospective statute disadvantages the offender affected by it if it

23 │ makes the punishment for a crime more burdensome after its commission.

24 │ See Collins, 497 U.S. at 41-42 (citing Beazell v. Ohio, 269 U.S. 167,

25 │ 169-70 (1925)); Weaver, 450 U.S. at 31.

26 │     The following statutes implicate ex post facto concerns: (1) one

27 │ that punishes as a crime an act previously committed, which was

28 │ innocent when done; (2) one that makes more burdensome the punishment

19

1   for a crime, after its commission; and (3) one that deprives one
2   charged with a crime of any defense available according to law when
3   the act was committed. See Collins, 497 U.S. at 46.

4        Laws that increase punishment, "whatever their form," may violate
5   the Ex Post Facto Clause. Collins, 497 U.S. at 46; see also Miller v.
6   Florida, 482 U.S. 423, 433 (1987); Weaver, 450 U.S. at 29, n.12. But
7   no ex post facto violation occurs if the change effected does not
8   increase the punishment, or change the elements of the offense, or the
9   ultimate facts necessary to establish guilt. See Miller, 482 U.S. at
10  433; see also Weaver, 450 U.S. at 29; California Dep't. of Corrections
11  v. Morales, 514 U.S. 499, n.7 (1995).

12       The trial court's application of the Three Strikes Law to
13  Petitioner's sentence did not violate the Ex Post Facto Clause. A
14  sentence enhancement for a prior conviction does not violate the Ex
15  Post Facto Clause, because it is not retroactively applied. See
16  Gryger v. Burke, 334 U.S. 728, 732 (1948); United States v. Ahumada-
17  Avalos, 875 F.2d 681, 684 (9th Cir.), cert. denied, 493 U.S. 837
18  (1989); United States v. Patterson, 820 F.2d 1524, 1527 (9th Cir.
19  1987). The enhancement is not an additional penalty for the prior
20  offense, but a stiffened penalty for the current crime, imposed
21  because it is repetitive. Gryger, 334 U.S. at 732. As long as the
22  enhancement statute was in effect at the time the petitioner committed
23  the charged offense, he had fair notice of the possible sentence
24  enhancement. See Weaver, 450 U.S. 24, 30; see also Atkins v. Parker,
25  472 U.S. 115, 130 ("All citizens are presumptively charged with
26  knowledge of the law.").

27       California enacted the current Three Strikes Law on March 7,
28  1994. See People v. Cargill, 38 Cal. App. 4th 1551, 1554 (1995) ("The

bill (Assem. Bill No. 971) which amended Penal Code Section 667 to add the so-called three strikes provisions was signed by the Governor and filed with the Secretary of State at 2:45 p.m. on March 7, 1994."). Here, Petitioner committed the charged offense, attempted second degree burglary, on August 3, 1996 - more than two years after California enacted the Three Strikes Law. (See Court of Appeal Opinion at 2). The sentence enhancement at issue, therefore, was in effect at the time Petitioner committed the charged offenses.

Petitioner, however, contends that the Three Strikes Law did not exist when he committed the underlying strikes. This fact does not alter the Ex Post Facto Clause analysis. The California Legislature enacted the Three Strikes Law before Petitioner committed the present offense. Hence, the Ex Post Facto Clause did not bar the trial court from applying the statute to the present offense. See Ahumada-Avalos, 875 F.2d at 684 ("Likewise, in the present case, though Ahumada-Avalos had committed the first offense (marijuana) prior to the enactment of the sentence enhancement statute, that statute was on the books at the time he committed the second offense. Hence, its application is not barred by the ex post facto clause.").

### 3.   Vague and Ambiguous

Petitioner contends that the Three Strikes Law is unconstitutionally vague and ambiguous. Specifically, he argues that the California Legislature provided inadequate notice that the Three Strikes Law applied to felonies committed before its enactment. Petitioner alleges that he was unaware that the felonies that he committed before the Three Strikes Law's enactment constituted "strikes" under that statute.

21

1    "[V]ague sentencing provisions may pose constitutional questions

2    if they do not state with sufficient clarity the consequences of

3    violating a given criminal statute." United States v. Batchelder, 442

4    U.S. 114, 123 (1979). Unless First Amendment freedoms are implicated

5    – and that is not the case here – "a vagueness challenge may not rest

6    on arguments that the law is vague in its hypothetical applications,

7    but must show that the law is vague as applied to the facts of the

8    case at hand. . . . The test for vagueness is whether the provision

9    fails to give a person of ordinary intelligence fair notice that it

10   would apply to the conduct contemplated." United States v. Johnson,

11   130 F.3d 1352, 1354 (9th Cir. 1997) (citations omitted).

12       At the time Petitioner committed his current crime on August 3,

13   1996, the California Legislature already had enacted the Three Strikes

14   Law.  It provided that a person who commits a felony after previously

15   being convicted of two prior serious or violent felonies is subject to

16   enhanced punishment as a third strike offender.  Cal. Penal Code §

17   667(e). A person of ordinary intelligence could reasonably understand

18   from the statute that his prior felonies might be used to enhance his

19   sentence under the statute, if he were convicted of a felony.

20   Johnson, 130 F.3d at 1354; People v. Furhman, 16 Cal. 4th 930, 939-40

21   (1997) (rejecting vagueness challenge to Three Strikes Law).

22       Petitioner argues that he could not have known that his prior

23   felonies would be counted as "strikes" before the enactment of the

24   Three Strikes Law.  But this argument holds no relevance to whether he

25   was aware of the Three Strikes Law at the time that he committed the

26   offense.  As such, Petitioner's claim must fail.

27   ///

28   ///

22

**RECOMMENDATION**

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the First Amended Petition for Writ of Habeas Corpus and dismissing this action with prejudice.

DATED:     November 27, 2002

JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

1

2

3

4

5

```
LODGED
CLERK, U.S. DISTRICT COURT

NOV 27

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY
```

# PROPOSED

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 CECIL DOUGLAS CARR,       )    Case No. CV 02-0572-GLT (JTL)
                       )

12            Petitioner,   )
                       )    ORDER ADOPTING FINDINGS,

13       v.              )    CONCLUSIONS, AND
                       )    RECOMMENDATIONS OF UNITED

14 TOM HORNUNG, Warden,     )    STATES MAGISTRATE JUDGE
                       )

15            Respondent.   )
                       )

16

17      Pursuant to 28 U.S.C. § 636, the Court has reviewed the First

18 Amended Petition, all the records and files herein, and the Report and

19 Recommendation of the United States Magistrate Judge.  The Court

20 concurs with and adopts the findings, conclusions and recommendations

21 of the Magistrate Judge.

22      IT IS ORDERED that judgment be entered denying the First Amended

23 Petition for Writ of Habeas Corpus and dismissing this action with

24 prejudice.

25

26 DATED:    _____    _____

                                    GARY L. TAYLOR

27                                     UNITED STATES DISTRICT JUDGE

28

```
LODGED
CLERK, U.S. DISTRICT COURT

    NOV 27 2002

CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY
```

**PROPOSED**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

CECIL DOUGLASS CARR,                )   Case No. CV 02-0572-GLT (JTL)
                                    )
                  Petitioner,       )
                                    )   **J U D G M E N T**
          v.                        )
                                    )
TOM HORNUNG, Warden,                )
                                    )
                  Respondent.       )
_____)

     In accordance with the Report and Recommendation of the United States Magistrate Judge filed concurrently herewith,

     IT IS HEREBY ADJUDGED that the First Amended Petition for Writ of Habeas Corpus is denied and this action is dismissed with prejudice.


DATED: _____        _____
                                GARY L. TAYLOR
                                UNITED STATES DISTRICT JUDGE